Hitchcock, J.
The question which is presented to the court for consideration, in this case, is within a very narrow compass. It depends entirely upon the construction of the act of February, 1804, “establishing a university in the town of Athens.” Swan’s L. L. 226; 2 Ohio L. 193, and the act amendatory thereto, passed February 21, 1805, Swan’s L. L. 232.
Other questions are argued by complainant’s counsel, but they do not properly arise in the case. Whether any provision was made in the lease for a revaluation is a matter of no consequence. The lessors refer, in the lease, to the law under which they act, as the authority conferring upon them the power to make the lease, and it was incumbent upon the lessee to know the extent of this authority. Unless the lease was in conformity with the law, it was one which the trustees had not power to make, and the complainants’ title would fail. The complainants can not avail themselves of the allegation of having purchased without notice, for they are bound to be acquainted with the title under which they claim.
*By the act incorporating the Ohio University, the trustees are required to have the lands, with which they were intrusted for the benefit of the institution, appraised by three freeholders; and they are authorized to lease these lands, reserving a rent of six per centum per annum.
This act further provides that the lands shall be subject to revaluation at the end of thirty-five, sixty, and ninety years, and that the lessee shall pay a yearly rent of six per centum per annum upon the revaluation so made. And, further, that the corporation shall have power to demand a further yearly rent, not *118 exceeding the amount of the tax imposed by the state on property of the like description. The same act declares that the lands themselves shall bo free from taxation by the state.
The amendatory act of 1805 empowers certain individuals therein named to appraise the lands, and authorizes the corporation to lease them (or ninety-nine years, renewable forever, reserving a fixed rent of six per centum per annum; prohibiting, however, the leasing of any land which shall not have been appraised as high as $1.75 per acre ; and it repeals so much of the former law as is contrary to this.
If, then, we can ascertain wherein the two acts differ, or wherein the latter is contrary to the former, we ascertain to what extent the former is repealed.
By the act of 1804, the lands were to be appraised by three freeholders ; by that of 1805, by five individuals named in the law. In this particular there is a difference.
By the former law the land was to be leased for ninety years, renewable forever; by the latter, for ninety-nine years, renewable forever. Here is another difference.
By the former law, the trustees were authorized to lease all the lands; by the latter, only such as should bo appraised as high as $1.75 per aero; and here is another difference.
The two laws are contrary, the one to the other, in the mode of appraisal, in the duration of the lease, and in the quantity of land to be leased. To this extent the former was repealed. *Wo have sought in vain for any other matter in which they conflict. It may have been the intention to have repealed all that part of the former law which related to the valuation and leasing of the land. But such intention can not be gathered by any known rule of construction, and, of course, we are not authorized to declare that such effect is produced.
The demurrer will be sustained, and the bill dismissed, at the costs of the complainants. Bill dismissed.